IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO MARTINEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SONESTA INTERNATIONAL HOTELS CORPORATION,<br><br>　　　　Defendant. | Case No. 25-cv-00178-MMC<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION; SETTING CASE MANAGEMENT CONFERENCE** |

Before the Court is defendant Sonesta International Hotels Corporation's ("Sonesta") Motion to Compel Arbitration, filed March 31, 2025. On April 14, 2025, plaintiff Gustavo Martinez ("Martinez") filed opposition, to which Sonesta replied. On May 16, 2025, the Court conducted a status conference, at which time the Court set deadlines for the parties to file supplemental briefs and additional evidence, and the parties thereafter filed their respective supplemental documents. Having read and considered the parties' written submissions, and having considered the comments made by counsel at the status conference, the Court rules as follows.

In his Complaint, Martinez asserts eight Causes of Action, each of which arises out of Martinez's employment relationship with a Sonesta hotel located in San Bruno, California. (See, e.g., Compl. ¶¶ 13-14, 38.) In support of its motion to compel arbitration, Sonesta argues Martinez's claims are subject to an arbitration agreement, which agreement provides that "any and all disputes, claims or controversies arising out of [an employee's] employment or the termination of [the employee's] employment which could be brought in a court" must be arbitrated. (See Rausch Decl. Ex. C ¶ I.) Sonesta contends that Martinez digitally signed the arbitration agreement during the onboarding

process at or about the time he was hired by Sonesta. Martinez, however, contends he never digitally or otherwise signed the arbitration agreement.

The Federal Arbitration Act ("FAA") "requires district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." See Wilson v Huuuge, Inc., 944 F.3d 1212, 1219 (9th Cir. 2019). "The limited role of the district court under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Id. (internal quotation and citation omitted). In the instant case, the question presented is whether there exists an agreement between Sonesta and Martinez to arbitrate their disputes.

Sonesta, "as the party seeking to compel arbitration, must prove the existence of a valid agreement by a preponderance of the evidence." See id. In support of its motion, Sonesta has submitted evidence explaining the manner in which a person seeking employment with Sonesta "[g]enerally" applies for a position. (See Rausch Decl. ¶ 6.) In particular, Jennifer Rausch ("Rausch"), Sonesta's "Chief People Officer" (see id. ¶ 2), explains that, under "the standard process," an applicant applies online, and, to do so, he must first "register" on Workday, a "system" used by Sonesta, by "creating a unique username and password." (see id. ¶¶ 5, 6, 8).[1] Next, Rausch explains, under the standard process, an applicant who has registered with Workday enters into the system "basic demographics," i.e., "the applicant's name, address, email address, and phone number, etc.," and completes an online application. (See id. ¶¶ 7-8.) Then, if the applicant is later hired, the applicant completes an "onboarding" process that entails, after entering "his or her unique password" into Workday, "click[ing] on the links to open, review, and digitally sign each document," one of which is an arbitration agreement. (See id. ¶¶ 9, 10, 12.) With regard to Martinez, Rausch states Sonesta's records show that, on

---

[1] Rausch works for Sonesta in Massachusetts (see id. at 7:15-17) and does not contend she has any personal knowledge as to the manner by which Martinez was hired.

2

August 11, 2021, a Workday account was created in Martinez's name (see id. ¶ 17.b), and that, on August 19, 2021, someone using said Workday account "complete[d]" Martinez's onboarding by digitally signing a number of documents, including the arbitration agreement, in each instance by "clicking the box next to 'I agree'" (see id. ¶ 17.d-f).

Based on the above evidence, Sonesta, relying on an assumption that Martinez followed the above-described standard process, argues Martinez was the person who created the subject Workday account and the person who, on August 19, 2021, accessed such Workday account and checked a box assenting to the terms in the arbitration agreement.

Martinez, however, has offered evidence, namely, two declarations in which he states he was not hired by Sonesta in the standard process as described in Rausch's declaration. Rather, Martinez states, (1) he "began working for Sonesta in or around 2000, but it was through another cleaning company that Sonesta contracted with" (see Martinez Supp. Decl. ¶ 2); (2) he never submitted to Sonesta, at any time, an application for employment either on-line or in person (see id. ¶ 7; see also Martinez Decl. ¶ 5); and (3) in August 2021, he went to the office of Mariela Rivera ("Rivera"), the "housekeeping manager" at Sonesta's hotel in San Bruno, who "handed [him] a one-page document" and "read and explained the contents" (see Martinez Decl. ¶¶ 4-5),[2] specifically, that the document was "regarding [his] transfer from [the] cleaning company that Sonesta contracted with" (see Martinez Supp. Decl. ¶ 2) and that he "would be working with Sonesta" (see Martinez Decl. ¶ 5).

In light of the evidence offered by Martinez, none of which has been disputed, the

---

[2] Martinez states that the document was written in English and that because he neither speaks nor reads English and speaks only Spanish, Rivera read the document to him in Spanish. (See id. ¶¶ 3, 5.) Martinez also states that Rivera told him she would email him "documents" for him to sign, but he responded that he "would not sign the documents if she emailed them to him" (see id. ¶ 4), explaining he "do[es] not know how to use email," including "how to open or access emails" (see Martinez Supp. Decl. ¶ 5).

3

1  Court finds Sonesta has failed to show that, in hiring Martinez, it followed the standard
2  practice. Indeed, it appears the standard practice apparently played no role in Martinez's
3  hiring.
4      The question remains whether, irrespective of the aberrant manner in which
5  Martinez was hired, Martinez was the person who created the Workday account in his
6  name, and, more to the point, whether he was the individual who, on August 19, 2021,
7  accessed the Workday account and assented to the terms of the arbitration agreement.
8      Under California law,[3] although "an electronic signature has the same legal effect
9  as a handwritten signature," see Ruiz v. Moss Bros. Auto Group, Inc., 232 Cal. App. 4th
10 836, 843 (2014), if a plaintiff "challenge[s] the validity of that signature in his opposition,"
11 the defendant is "then required to establish by a preponderance of the evidence that the
12 signature [is] authentic," see Espejo v. Southern California Permanente Medical Group,
13 246 Cal. App. 4th 1047, 1060 (2016).
14     Here, Martinez has challenged the validity of the electronic signature on which
15 Sonesta relies. Specifically, Martinez declares that "[a]t no time during [his] employment
16 with Sonesta did [he] create a username and password with Workday" or "create[ ] a
17 profile on Workday" (see Martinez Decl. ¶ 6), and that he "did not receive any onboarding
18 documents from Sonesta on Workday to electronically or digitally sign" (see id. ¶¶ 8, 10).
19     In neither its reply nor its supplemental briefing does Sonesta cite evidence that
20 suffices to establish by a preponderance of the evidence that, in spite of Martinez's
21 denials, he must have been the individual who electronically agreed to arbitrate any
22 disputes he had with Sonesta. As Sonesta acknowledges, "[n]o one who could have
23 assisted [Martinez] to complete his application for employment with Sonesta is still
24 employed by Sonesta." (See Def.'s Supp. Brief at 3:4-5.) Consequently, Sonesta is

---

[3] A district court applies California law in determining whether the parties entered into an arbitration agreement. See Wilson, 944 F.3d at 1219 (holding, "[t]o determine whether [an arbitration] agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts") (internal quotation and citation omitted).

1   essentially left to rely on an inference that because employees "typically" use Workday to
2   "complete their onboarding process" (see Tolosa Decl. ¶¶ 3, 5 (describing process by
3   which employees at Sonesta's San Bruno location "typically" engage in "onboarding")),
4   Martinez must have done so as well.  As with the lack of evidence that Martinez applied
5   for a position in the manner that applicants generally follow, however, there is a similar
6   lack of evidence that Martinez engaged in the onboarding process in the typical manner
7   or that he participated in it at all.[4]

8   Moreover, other evidence supports a finding that at least one employee at the San
9   Bruno location had knowledge of and used the sign-in credentials for a Workday account
10  in Martinez's name.  In particular, Martinez states that, "[i]n or around 2023, on two
11  separate occasions," he was told by "Samuel Tolosa's assistant, Stephanie Ramirez,"[5]
12  that he "had to complete employee surveys," and that she, using a "sheet" that had
13  "employee login credentials," used those credentials, including a "password," to sign him
14  onto a "computer at Sonesta," at which point "he completed the surveys as instructed by
15  Stephanie."  (See Supp. Martinez Decl. ¶ 9.)  Sonesta has not offered evidence to the
16  contrary.  Indeed, Sonesta has offered evidence that is consistent therewith, namely, that
17  during the three-year period in which Sonesta employed Martinez (see Rausch Decl.
18  ¶ 18), someone using Martinez's Workday account logged into said account on five
19  different dates (see Kent Decl. ¶ 8, Ex. A), using computer terminals with URLs assigned
20  to Sonesta's San Bruno hotel (see Ensminger Decl. ¶¶ 3-6), including "Sonesta
21  Employee's Manager controlled computer terminals" (see id. at ¶ 6).

---

[4] For example, no Sonesta employee states he/she saw Martinez sign onto Workday to engage in onboarding.  For this reason, Sonesta's reliance on Barrera v. Floor & Decor Outlets, 2024 WL 3993871 (C.D. Cal. July 11, 2024) is misplaced; in the cited case, the defendant employer submitted evidence that the plaintiff's supervisor "observed" the plaintiff using a company computer to engage in the onboarding process in which an employee must agree to an arbitration agreement to complete the process. See id. at *1, *4.

[5] Tolosa states that, "since June 2023," he "ha[s] been responsible for the day-to-day management of the San Bruno location's operations."  (See Tolosa Decl. ¶ 2.)

In sum, having fully considered the evidence and all reasonable inferences that could be drawn therefrom, the Court finds Sonesta has failed to show by a preponderance of the evidence that Martinez assented to the arbitration agreement.

Accordingly, the motion to compel arbitration is hereby DENIED.

In light thereof, a Case Management Conference is hereby SET for December 12, 2025, at 10:30 a.m.  A Joint Case Management Statement shall be filed no later than December 5, 2025.

**IT IS SO ORDERED.**

Dated: October 3, 2025

MAXINE M. CHESNEY
United States District Judge